

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-2004

# Cobb v. Phila Gas Works

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2172

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Cobb v. Phila Gas Works" (2004). *2004 Decisions.* Paper 73.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/73

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2172
_____

ANTOINETTE COBB

v.

PHILADELPHIA GAS WORKS,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 01-4937)
District Judge: The Honorable R. Barclay Surrick

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 7, 2004

BEFORE: AMBRO and VAN ANTWERPEN, Circuit Judges,
and SHADUR, District Judge*

(Filed:   December 15, 2004)

_____

OPINION

_____

_____

*Honorable Milton I. Shadur, United States District Judge for the Northern District of
Illinois, sitting by designation.

SHADUR, <u>District Judge</u>

Antoinette Cobb ("Cobb") appeals the District Court's grant of summary judgment in favor of Philadelphia Gas Works ("PGW") as to Cobb's claims of disability discrimination, sex discrimination, race discrimination and retaliation. Jurisdiction was proper in the District Court pursuant to 28 U.S.C. §§ 1331 and 1367(a). We have jurisdiction pursuant to 28 U.S.C. §1291, and we affirm.

<u>Factual Background</u>

Because we write solely for the benefit of the parties, we recount only those facts that are relevant to the issues before us. In 1992, while working as a Gas Supply Foreman at PGW, Cobb was diagnosed with congestive cardiomyopathy. In January 1993 PGW's medical department determined that her condition rendered her incapable of performing her regular duties but that she could perform "modified duties" so long as those duties involved only day work and did not involve physical activity, climbing, exposure to extreme temperatures or exposure to noxious fumes. Based on the medical department's report and its determination that the position of Gas Supply Foreman involved several of those demands as well as rotating shift work, the Gas Supply Department recommended that she be considered for other open positions in PGW that entailed only administrative and office work.

In October 1994 Cobb was transferred to PGW's collections department, where she assumed the position of Credit Collections Supervisor ("CCS")--a position that did not involve shift work, exposure to extreme temperatures, exposure to noxious fumes or physical activity. That transfer, which became permanent in January 1995, involved no adjustment in pay. Cobb continued to work in the CCS capacity until she left PGW on extended sick leave in September

2

1997.

Cobb remained on sick leave during the ensuing period of over 1-1/2 years. On May 6, 1999 Cobb sent a letter to PGW requesting to "return to work from [her] home." Following a meeting with Cobb to discuss possible arrangements, PGW responded on January 11, 2000 that it was unable to comply with her request because CCS duties could not be performed remotely and because no other positions were available for which PGW could make reasonable accommodation. PGW thus terminated Cobb on March 1, 2000.

### Application of the Summary Judgment Standards

We exercise plenary review over the District Court's grant of summary judgment and apply the same standard as did the District Court: whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiff (Fed. R. Civ. P. ("Rule") 56(c); Debiec v. Cabot Corp., 352 F.3d 117, 128 n. 3 (3d Cir. 2003)). One of the primary purposes of Rule 56 is to allow the court "to isolate and dispose of factually unsupported claims or defenses" (Celotex v. Catrett, 477 U.S. 317, 323-24 (1986)). Applying that standard here, we conclude that the District Court properly granted summary judgment in PGW's favor.

As to Cobb's claims of disability discrimination under the Americans with Disabilities Act ("ADA," 42 U.S.C. § 12112) and the Pennsylvania Human Relations Act ("Human Relations Act," 43 Pa. Cons. Stat. Ann. §§ 951 et seq.), the District Court concluded that Cobb failed to establish a prima facie claim of discrimination. Cobb does not contest that finding on appeal, but she does argue that the District Court erred when it rejected her claim that PGW violated the ADA by failing to engage in the interactive process required under the statute. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999), a case on which Cobb relies, made

clear that under the ADA an employer has a duty to participate in an interactive process to determine appropriate accommodations once an employee has provided notice of a disability and a request for accommodation. But Taylor, id. at 317 also held that the employer's duty to engage in the process does not "remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions." In rejecting Cobb's claim, the District Court correctly observed that Cobb failed to meet her burden of showing she was qualified for other positions that she claimed were available to accommodate her medical restrictions. Cobb's appeal points to nothing in the record that would support such a showing, and we therefore agree that Cobb's claim that PGW failed to engage in the interactive process has no merit.

Cobb also claims that PGW discriminated against her on the basis of her sex and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. §§ 2000e-2 et seq.) and the Human Relations Act. On that score she asserts that PGW refused to find her a position to which she could return from sick leave and that it rejected her request to work from home on the basis of her race or sex or both. In denying both of those claims, the District Court held that Cobb had failed to establish an essential element of the prima facie case of discrimination under Title VII: that she was both qualified for and rejected for the positions in question (McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1993)). Nothing in the record demonstrates that Cobb was qualified for the positions she claims were denied to her, and we thus agree that Cobb's Title VII sex and race discrimination claims (and related state law claims) also fail as a matter of law.

Finally Cobb claims that she suffered adverse employment action in retaliation for

4

engaging in activities protected by the ADA, Title VII and the Human Relations Act. Assuming without deciding that Cobb did suffer adverse employment actions, the District Court held that Cobb nonetheless failed to establish a prima facie claim of retaliation because she could not demonstrate the necessary causal link between any protected activity on her part and the assertedly adverse employment actions (see Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)).

On that score Cobb states that from 1983 through January 6, 2000 she approached the EEOC and PGW management with charges of race and sex discrimination and complaints as to PGW's failure to accommodate her asserted disability. But the only potentially arguable adverse employment actions that she identifies are her transfer to the CCS position and her termination on January 11, 2000.

As for the transfer, it is problematic both in substantive terms (it is doubtful that it qualifies as an adverse action) and as to timeliness (Cobb must seek to characterize it as a continuing event based on PGW's failure to transfer her back to her former position). But even if Cobb were able to clear both of those hurdles, she has failed to identify any causal connection between her transfer and the protected activity that she engaged in, and she certainly failed to rebut PGW's reasons for the transfer.

As for Cobb's termination, PGW offered a legitimate, nondiscriminatory reason for ending her employment, and its termination letter is consistent with that reason. We also note that there is uncontradicted evidence that the decision to terminate Cobb was made before her final protected activity. Cobb's failure to offer any evidence beyond temporal proximity that might demonstrate that PGW's reasons were pretextual or motivated by a retaliatory intent

5

compels us to affirm the District Court's dismissal (<u>Williams v. Philadelphia Housing Auth. Police Dep't</u>, 380 F.3d 751, 761 (3d Cir. 2004)).

<u>Conclusion</u>

For the foregoing reasons, we AFFIRM the judgment of the District Court.